UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| CHAD WHITTYMORE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 4:15-cv-00158-RLY-DML |
| ) | |
| E & H TUBING, INC., ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON PLAINTIFF'S MOTION TO REMAND**

Plaintiff, Chad Whittymore, moves to remand this case for lack of diversity jurisdiction. For the reasons set forth below, Plaintiff's Motion to Remand is **DENIED**.

**I.     Background**

Plaintiff and his father were the former owners of Indiana Steel and Tube, Inc., ("IST"). (Filing No. 1-1, Employment and Non-Competition Agreement ("Non-Compete Agreement") at 1). In October 2012, E & H Tubing, Inc., the defendant herein, purchased the assets of IST while IST was in bankruptcy proceedings in the Southern District of Indiana. (*Id.*). E & H employed Plaintiff as Vice President of Purchasing. (Filing No. 25-1, Declaration of Gary Birnbaum ("Birnbaum Dec.") ¶¶ 3, 7). Plaintiff's base pay was $100,000 per year, plus bonus. (Non-Compete Agreement, Ex. A). In exchange, Plaintiff agreed to be bound by an Employment and Non-Competition Agreement for eighteen months after his employment with E & H ended. (Birnbaum Aff. ¶ 5).

1

According to the President of E & H, Gary Birnbaum, Plaintiff was responsible not only for purchasing, but also for sales. (*Id.* ¶ 7). His position required familiarity with (1) E & H's customers, (2) the amount of sales to those customers, and (3) E & H's prices. (*Id.*). In 2015, E & H's sales to nineteen of its primary customers totaled $8,383,704. (*Id.* ¶ 10). Furthermore, Plaintiff had direct sales responsibility for ten of those customers; his 2015 sales to those accounts totaled $1,400,549. (*Id.* ¶ 11).

Plaintiff resigned in April 2015, and went to work for Iron World, a customer of E & H. (*Id.* ¶ 13; Filing No. 1-1, Complaint ¶ 5). In the first half of 2015, before Plaintiff went to work there, E & H's invoiced sales to Iron World totaled over $500,000. In the second half of 2015, after Plaintiff went to work for Iron World, E & H's invoiced sales to Iron World totaled $90,000, an 80% decline. (Birnbaum Dec. ¶ 13).

On October 21, 2015, Plaintiff filed a Complaint for Declaratory Judgment in the Jackson Superior Court, asking the court to declare the parties' Non-Compete Agreement is unenforceable. On November 16, 2015, E & H timely removed the action to this court pursuant to 28 U.S.C. § 1332, diversity of citizenship. Plaintiff seeks remand, claiming E & H has not satisfied the amount in controversy. Plaintiff concedes the parties are citizens of different states.

**II.    Discussion**

A defendant invoking diversity jurisdiction must establish both complete diversity of citizenship and that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). In declaratory actions, such as this case, "it is well established that the amount in controversy is measured by the value of the

object of the litigation." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977). In this circuit, "the object may be valued from either perspective—what the plaintiff stands to gain, or what it would cost the defendant to meet the plaintiff's demand." *Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 799-800 (7th Cir. 2003). This is known as the "'either viewpoint' (plaintiff's or defendant's) approach." *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 609 (7th Cir. 1997).

"The amount in controversy is the amount required to satisfy the plaintiff's demands in full on the day the suit begins, or in the event of removal, on the day the suit was removed." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 510-11 (7th Cir. 2006) (internal citations omitted). Where, as here, the Plaintiff provides little information regarding the value of his claim, the defendant need only provide "a good-faith estimate of the stakes [which] is plausible and supported by a preponderance of the evidence." *Id*. Once the defendant has carried that burden, "the plaintiff can defeat jurisdiction only if 'it appears to a legal certainty that the claim is really for less than the jurisdictional amount.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

E & H seeks to satisfy the amount in controversy from its viewpoint—i.e., "the 'pecuniary result' that would flow to the plaintiff (or defendant) from the court's granting the [] declaratory judgment." *Am.'s MoneyLine, Inc. v. Coleman*, 360 F.3d 782, 786 (7th Cir. 2004). In other words, E & H anticipates the potential value of the harm to its business if the Non-Compete Agreement is not enforced exceeds $75,000. (Birnbaum Dec. ¶ 12).

Plaintiff attacks E & H's valuation because it relies, at least in part, on gross sales from 2015. Its valuation is deficient, Plaintiff continues, because it does not provide anticipated gross sales for 2016, nor does it provide any calculation regarding a reasonable expectation of what its true anticipated losses would be in terms of net profit if Plaintiff were to prevail. As support for his position, Plaintiff relies on *Tuminaro v. Garland Co., Inc.*, No. 11-cv-203-bbc, 2011 WL 5983303 (W.D. Wis. Nov. 29, 2011).

In *Tuminaro*, the plaintiff sought a declaration in state court that would invalidate various restrictive covenants he signed for his former employer, including a non-compete and a confidentiality agreement. *Id*. at *1. The defendant removed the case to the district court asserting diversity of citizenship. *Id.* The issue presented was whether the defendant was able to establish that the amount in controversy was met based on the harm it would suffer if the plaintiff's declaratory judgment action was successful. The defendant presented evidence of: (1) the plaintiff's gross sales from 2007-2009; (2) the plaintiff's earnings between 2007-2009; and (3) evidence from 2010 that the defendant's sales for plaintiff's region plummeted from $932,625 to $105,990 and profits fell from $404,155 to $45,588, after the plaintiff began competing against the company. *Id.* In addition, the defendant claimed the plaintiff possessed confidential information, including customer lists and costs and profit margins, valued at more than $75,000. The court rejected the defendant's submission because it failed to explain how the evidence it cited addressed "whether defendant has shown that a declaration in plaintiff's favor will cost defendant more than $75,000 or enable plaintiff to gain more than $75,000." *Id.* at *2.

Unlike the defendant in *Tuminaro*, E & H has explained how the evidence reflects anticipated lost sales.  For example, if E & H were to lose just one percent of its sales to Plaintiff, it would lose $83,837.  Plaintiff complains E & H's one-percent figure is unsupported and entirely speculative.  But "[t]he question is not whether the estimate [i.e., the amount at stake] is speculative, but whether the speculation is reasonable based on the evidence."  *Mailwaukee Mailing Shipment & Equipment, Inc. v. Neopost, Inc.*, 259 F.Supp.2d 769, 774 (E.D. Wis. April 24, 2003).  E & H's one-percent figure is based on gross sales—a fact the Plaintiff has not disputed.  The one-percent figure is an illustrative example of the stakes of this litigation and is reasonable given the position and the customer relations Plaintiff developed during his employment with E & H.  In addition, E & H provides evidence of an 80% drop in sales to Iron World since Plaintiff began working there.  It is reasonable to infer that E & H's sales to Iron World will continue to decline, given that there is no evidence of a change in circumstances except for the Plaintiff's change in employment.  (*See* Birnbaum Dec. ¶ 13 ("I believe the drop in sales is attributable to [Plaintiff's] competition with E & H Tubing, Inc.)).  To the extent *Tuminero* suggests the proponent of jurisdiction (here, E & H) must *prove* its damages, the court respectfully disagrees.  "Whether damages will exceed $75,000 is not a fact but a prediction."  *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006).

Furthermore, E & H is not required to proffer evidence of lost profits or anticipated lost profits, and the *Tuminaro* court explained why.  Lost profits are relevant where the plaintiff is the former employer "seeking to enforce the contract and to stop the former employee from competing."  *Tuminaro*, 2011 WL 5983303, at * 2.  Were the

5

employer to prevail, the loss to the employer could reasonably be measured by "the profits the employer earned on business generated by the employee before the employee left the employer and the losses sustained after his departure." *Id.* But here, the plaintiff is the former employee seeking to compete against his former employer. As Plaintiff is a salesman who seeks to compete against his employer, the value of E & H's lost sales or of anticipated lost sales is relevant.

The court is more persuaded by a case relied upon by E & H entitled *Johnson v. ISCO Indus., LLC*, No. 08-cv-485, 2008 WL 4999274 (E.D. Wisc. Nov. 21, 2008). Like the facts presented in this case, the defendant claimed its loss exceeded the jurisdictional threshold if the non-compete agreement was not enforced, and presented the following evidence: (1) the loss of benefit of the non-competition agreement; (2) loss of the corporate asset of goodwill that plaintiff had developed with over 100 customers; (3) plaintiff's misappropriation of the defendant's customer goodwill to a direct competitor; (4) plaintiff's use of confidential and proprietary information for the defendant's products; and (5) evidence that even a 0.5% shift of the defendant's sales to its competitor would represent a shift of about $1,100,000 in revenue over the course of one year. *Id.* at *2. The district court denied the motion, finding that from the defendant's point of view, more than $75,000 was at stake. *Id.* at *3.

Like the defendant in *Johnson*, E & H stands to lose the benefit of the Non-Compete Agreement, the misuse of confidential and proprietary information about sales and pricing, and the value of sales shifted away from E & H to Plaintiff—at least with respect to Iron World. Given Plaintiff's close relationship with at least ten of E & H's

major customers, it is reasonable to infer sales will decline in the future. (*See* Birnbaum Dec. ¶ 13 ("I anticipate similar losses of sales to other customers if [Plaintiff] is allowed to compete.")). The loss of customer goodwill Plaintiff developed with his customers cannot be understated. After E & H purchased IST, it sought the services of Plaintiff not only to develop the business, but also to retain the customer relationships Plaintiff already had. Therefore, E & H has established that if Plaintiff prevails, a good faith estimate of its damages will exceed $75,000.

To avoid federal diversity jurisdiction, Plaintiff must demonstrate to a legal certainty that the amount in controversy is less than $75,000. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006) ("Although the proponent of jurisdiction may be called on to prove facts that determine the amount in controversy—such as the economic effect that compliance with the law would have had on GMAC—once these facts have been established the proponent's estimate of the claim's value must be accepted unless there is a 'legal certainty that the controversy's value is below the threshold."); *Carroll v. Stryker*, 658 F.3d 675, 681 (7th Cir. 2011) ("The legal-certainty test sets the bar high for excluding federal subject-matter jurisdiction, and for good reason: District courts should not get bogged down at the time of removal in evaluating claims on the merits to determine if jurisdiction exists."). Plaintiff's motion provides no reason to believe that the amount is under the minimum threshold.

## III. Conclusion

The court finds it has diversity jurisdiction over this case. Accordingly, Plaintiff's Motion to Remand (Filing No. 10) is **DENIED**.

**SO ORDERED** this 23rd day of September 2016.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.